HATTON v CITY OF SAGINAW

Docket No. 85873. Submitted June 17, 1986, at Lansing. Decided April 21, 1987. Leave to appeal applied for.

Thomas W. Hatton, a fire fighter for the City of Saginaw, was granted a duty disability retirement at the age of fifty-four in 1977 for which he received a duty disability pension of $512.63 biweekly. In 1978, Hatton petitioned for workers' compensation benefits alleging a work-related injury which occurred on October 7, 1975. The parties stipulated that Hatton continued to be disabled as a result of the injury. The hearing officer ordered benefits paid from August 18, 1977, at the rate of $112 per week until further order of the Bureau of Workers' Disability Compensation, plus unpaid medical expenses. The hearing officer also found that Hatton's duty disability pension did not constitute "like benefits" prescribed by the city's administrative code and that Hatton therefore was not barred from receiving workers' compensation benefits under the election provision of the workers' compensation act. The City of Saginaw appealed to the Workers' Compensation Appeal Board, which affirmed. The city then appealed to the Court of Appeals.

The Court of Appeals *held:*

1. Hatton is entitled to receive both his duty disability pension benefits and workers' compensation benefits without election for periods of disability prior to July 24, 1983, the effective date of 1983 PA 162, which amended § 161 of the workers' compensation act to remove references to benefits prescribed by city charter.

2. The amended § 161 applies to benefits paid after July 24, 1983, requiring coordination of all "like benefits" and workers' compensation benefits for all compensation periods subsequent to its effective date regardless of when the injury occurred.

3. Hatton's duty disability pension benefits are not "like benefits" for purposes of § 161 of the workers' compensation

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 1, 240 *et seq.*; 364, 365.

See the annotations in the Index to Annotations under Workers' Compensation.

act. Upon reaching the age of fifty-five, Hatton became eligible for voluntary retirement. His duty disability pension benefits should be considered retirement benefits as of that time. Retirement benefits are not "like benefits" subject to setoff against workers' compensation benefits under § 161. Hatton therefore was not subject to the election provision of § 161 after having attained the age of fifty-five.

4. While § 161 of the workers' compensation act is not applicable to Hatton's retirement benefits, § 354 of the act, which allows coordination of retirement pension benefits and workers' compensation benefits, may be. Since this issue was raised for the first time in the Court of Appeals, remand to the WCAB for determination of the applicability of coordination pursuant to § 354 is necessary.

5. On remand, the WCAB may also determine Hatton's entitlement to supplemental workers' compensation benefits under § 352(1) of the workers' compensation act.

Affirmed, but remanded to the WCAB for further proceedings.

1. WORKERS' COMPENSATION — MUNICIPAL PENSION SYSTEMS — ELECTION OF BENEFITS.

The provision of the workers' compensation act that permits police or fire fighters to waive workers' compensation benefits and receive instead like benefits under a municipal charter was not applicable to duty disability pensions that were provided by a city ordinance prior to July 24, 1983; effective that day, an amendment to the law removed the references to charter provisions so that the law would be applicable to like benefits provided in any manner by a municipality or village (1983 PA 162; MCL 418.161; MSA 17.237[161]).

2. WORKERS' COMPENSATION — MUNICIPAL PENSION SYSTEMS — ELECTION OF BENEFITS.

A fire fighter receiving duty disability pension benefits under the provisions of a city ordinance was entitled to receive both his duty disability pension benefits and workers' compensation benefits without election up until July 24, 1983; an amendment to the workers' compensation act became effective that day under which an election between duty disability benefits and workers' compensation benefits must be made regardless of the date of injury (1983 PA 162; MCL 418.161; MSA 17.237[161]).

3. WORKERS' COMPENSATION — APPEAL — QUESTIONS OF LAW.

The Court of Appeals has authority to review questions of law involved in a final order of the Workers' Compensation Appeal Board.

4. Workers' Compensation — Duty Disability Pension Benefits — Retirement Benefits — Setoff.

Duty disability pension benefits which automatically are recalculated as retirement benefits upon the recipient's attainment of a certain age are not subject thereafter to setoff against workers' compensation benefits under § 161 of the workers' compensation act, since retirement benefits are not "like benefits" subject to setoff under that section of the act (MCL 418.161; MSA 17.237[161]).

5. Workers' Compensation — Retirement Benefits — Setoff.

Section 354(1)(e) of the Worker's Disability Compensation Act allows coordination of retirement pension benefits and workers' compensation benefits (MCL 418.354[1][e]; MSA 17.237[354][1][e]).

*Van Benschoten, Hurlburt & Tsiros, P.C.* (by *Lawrence A. Hurlburt* and *John A. Tsiros*), for plaintiff.

*Otto W. Brandt, Jr.,* City Attorney, and *Floyd P. Kloc,* Chief Assistant City Attorney, for defendant.

Before: Shepherd, P.J., and J. H. Gillis and MacKenzie, JJ.

Shepherd, P.J. Defendant appeals from the May 19, 1985, decision of the Workers' Compensation Appeal Board affirming the hearing referee's decision finding that plaintiff had suffered a job-related injury on October 7, 1975, and ordering defendant to pay workers' compensation benefits of $112 per week from August 18, 1977, until further order of the Bureau of Workers' Disability Compensation (bureau), plus unpaid medical expenses. We affirm and remand for further proceedings.

Plaintiff, a fire fighter employed by defendant, was retired at age fifty-four when granted a duty disability retirement effective August 18, 1977. Pursuant to Saginaw Administrative Code, ch 5, art 1, § 124.2 (SAC § 124.2), plaintiff was entitled

to a biweekly duty disability pension of $512.63. Plaintiff petitioned for workers' compensation benefits on May 4, 1978, alleging a work-related injury which occurred on October 7, 1975. At the hearing, the parties stipulated that plaintiff continued to be disabled as a result of the injury. On January 27, 1981, the hearing officer ordered benefits paid from August 18, 1977, at the rate of $112 per week, until further order of the bureau, plus unpaid medical expenses. In making his determination, the hearing officer found that plaintiff's duty disability pension did not constitute "like benefits" prescribed by the municipal charter. Accordingly, plaintiff was not barred from receiving workers' compensation benefits under the election provision of MCL 418.161; MSA 17.237(161) (§ 161). The WCAB affirmed on May 29, 1985, relying on *Bannan v Saginaw,* 420 Mich 376; 362 NW2d 668 (1984), reh den 421 Mich 1202 (1985).

I

The first issue is the applicability of § 161 to plaintiff's pension. At the time plaintiff petitioned for workers' compensation benefits, § 161 provided in part:

> Policemen, firemen, or employees of the police or fire departments, or their dependents, in municipalities or villages of this state having charter provisions prescribing like benefits, may waive the provisions of this act and accept in lieu thereof like benefits as are prescribed in the charter but shall not be entitled to like benefits from both. Nothing contained in this act shall be construed as limiting, changing, or repealing any of the provisions of a charter of a municipality or village of this state relating to benefits, compensation, pensions, or retirement independent of this act, provided for employees.

The Supreme Court interpreted § 161 and Saginaw's duty disability ordinance in *Bannan, supra.* The Court found that § 161 did not apply to the duty disability pension plan because the plan was provided for by ordinance rather than city charter and that the plaintiffs were entitled to both the pension benefits and workers' compensation benefits.

Section 161 was amended by 1983 PA 162 to remove the references to benefits prescribed by charter:

> Police officers, fire fighters, or employees of the police or fire departments, or their dependents, in municipalities or villages of this state providing like benefits, may waive the provisions of this act and accept like benefits that are provided by the municipality or village but shall not be entitled to like benefits from both the municipality or village and this act; however, this waiver shall not prohibit such employees or their dependents from being reimbursed under section 315 for the medical expenses or portion of medical expenses that are not otherwise provided for by the municipality or village.

The amendment was effective July 24, 1983.

Unless we are willing to apply the amendment retroactively, it can have no effect on plaintiff's receiving both pension benefits and workers' compensation benefits prior to July 24, 1983, given the holding in *Bannan. Bannan* expressed no opinion as to the amendment's applicability. 420 Mich at 386, n 4.

Although this issue is one of first impression, we find the Supreme Court's decision in *Franks v White Pine Copper Division,* 422 Mich 636; 375 NW2d 715 (1985), reh den 424 Mich 1202 (1985), instructive. In *Franks,* the Court examined the

applicability of the coordination of benefits provision in MCL 418.354; MSA 17.237(354) and the unemployment compensation setoff provision in MCL 418.358; MSA 17.237(358) to workers' compensation claimants whose injuries predated the effective date of the amendments containing those sections. After examining the language of the provisions, the Court found that the amended sections were applicable to workers whose injuries preceded the effective dates of the amendments. The holding, however, was limited to workers' compensation benefits payable *after* the effective date for periods of disability *after* that date. 422 Mich at 664, 669, 674.

By analogy to *Franks,* we do not believe the amendment presently under our consideration should apply to payments prior to July 24, 1983, for periods of disability prior to that date. Defendant apparently concedes this. In its request for relief, defendant has only asked that this Court reverse the decision of the WCAB "insofar as it awards plaintiff any benefits after the July 24, 1983 effective date of 1983 PA 162." Accordingly, we hold that *Bannan* controls as to benefits paid before that date and that plaintiff was entitled to receive both his duty disability pension benefits and workers' compensation benefits without election.

The next question is whether amended § 161 should apply to benefits paid after July 24, 1983. Again by analogy to *Franks,* we hold that it does. In *Franks,* the Court found the statute clear and unambiguous, requiring coordination for all compensable periods subsequent to its effective date regardless of when the injury occurred. 422 Mich at 651. The Court held that such application of the amended provisions did not constitute retroactive application of those provisions. Compensation ben-

efits were not being retroactively coordinated or reduced; rather, the benefits of all disabled workers were being prospectively coordinated after the effective date of the amendments regardless of when the workers were injured. 422 Mich at 652-653.

As was true of the sections considered in *Franks,* amended § 161 is clear and unambiguous, requiring certain workers to elect between workers' compensation benefits and other "like benefits" provided by a municipality. The statute's language does not limit its application to those workers injured after the effective date of the amendment, nor does it make an exception for workers injured prior to that date.

Plaintiff argues that application of § 161 to a governmental pension such as his raises a constitutional problem. Plaintiff relies on a footnote to the *Franks* opinion:

> Income-maintenance benefits payable under a legislatively mandated social welfare program are not property protected by the Due Process Clause, the Contract Clause,[9] or the Takings Clause from substantive change by subsequent legislation irrespective of whether the recipient contributed to the cost of funding the benefit or of whether the program replaces a tort remedy which has been abolished.
>
> ---
>
> [9] The Michigan Constitution provides, however, that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Const 1963, art 9, § 24. [422 Mich 654.]

We do not find that the election posed by § 161 would diminish or impair plaintiff's rights in his pension if the section were applicable. It does not act to deny a pension; at issue is a worker's right

to receive both a pension and the benefits of a social welfare program such as workers' compensation.

## II

Having concluded that § 161 applies to plaintiff's workers' compensation benefits after July 24, 1983, the question remains whether plaintiff's duty disability pension benefits are "like benefits" so as to require an election of benefits. We hold that they are not.

Our review of the record indicates that plaintiff has not waived this issue. Neither the hearing officer nor the WCAB made a determination of whether these are "like benefits," having found § 161 completely inapplicable. We recognize that the WCAB is exclusively empowered to make factual determinations in workers' compensation cases and that no exception to this rule is made for considerations of judicial economy. *Williams v Lang (After Remand),* 415 Mich 179, 183; 327 NW2d 240 (1982). The question of whether these are "like benefits," however, is one of law rather than fact. This Court has authority to review questions of law involved in a final order of the WCAB. *Aquilina v General Motors Corp,* 403 Mich 206, 213; 267 NW2d 923 (1978). Accordingly, we consider the issue on the merits.

The Supreme Court's disposition of *Bannan, supra,* made it unnecessary for the Court to determine if the duty disability pension benefits presently before us are "like benefits" within the meaning of § 161. Our interpretation of the relevant provisions of the Saginaw Administrative Code convinces us that the pension benefits are not "like benefits" once a recipient has attained age fifty-five.

SAC § 123.1 permits duty disability retirement for Saginaw police officers and fire fighters who become totally incapacitated in the course of their employment. A pension upon retirement is provided for in SAC § 124.1. SAC § 124.2 provides:

> A member who retires prior to his attainment of age 55 years on account of disability, as provided in Section 123, shall receive a disability pension computed according to subsection 118.1 and 118.3. For the exclusive purpose only of computing his disability pension his credited service shall be increased by the numbers of years, and fraction of a year, in the period from the date of his disability retirement to the date he would attain age 55 years. Upon his attainment of age 55 years his disability pension shall be recomputed using a final average salary determined according to the salaries at the time he attains age 55 years for the ranks used in computing his final average salary at the time of his disability retirement. In no event shall such recomputed disability pension be less than the disability pension he received prior to his attaining age 55 years. Upon his retirement he shall have the right to elect, in lieu of a straight life disability pension, to receive his disability pension under an option provided for in Section 120. To his attainment of age 55 years his disability pension shall be subject to Sections 128 and 129.

SAC § 129.1 requires that any workers' compensation benefits payable be offset against any pension benefits payable. In *Bannan v Saginaw,* 120 Mich App 307, 320; 328 NW2d 35 (1982), aff'd 420 Mich 376, 382; 362 NW2d 668 (1984), this Court held that the SAC § 129 offset does not apply to disabled retirees after they reach age fifty-five.

Under the disability pension provided for by SAC § 124, workers' compensation benefits paid to a disabled worker must be offset against pension

payments until the disabled worker reaches age fifty-five. We conclude that the duty disability retirement pension benefits paid to a disabled worker who is not fifty-five years old constitute "like benefits" under § 161. We note, however, that the offset requirements of the Saginaw Administrative Code eliminate the need to apply § 161 to benefits received before age fifty-five.

The disabled worker's pension is recalculated when the worker reaches fifty-five. At the time of the instant plaintiff's retirement, fifty-five years corresponded to the age at which a Saginaw fire fighter could voluntarily retire, SAC § 102.1(u). This pension is no longer subject to the workers' compensation offset provision of SAC § 129. Although the pension is still referred to as a "disability pension," the worker who attains age fifty-five is actually receiving retirement benefits to which the worker would be entitled regardless of disability. We believe that once a disabled worker attains age fifty-five the pension should be considered a retirement rather than disability pension. As the pension benefits must be considered retirement benefits, they are not "like benefits" under § 161.[1] See *Teddy v Dep't of State Police,* 102 Mich App 412, 421-422; 301 NW2d 876 (1980). Plaintiff was not subject to the election provision of § 161 after he attained age fifty-five.

Although both *Bannan* opinions ultimately turned on the inapplicability of § 161 rather than whether "like benefits" were involved, our holding

---

[1] SAC § 102.1(u) also provides that the voluntary retirement age for police officers is fifty-two years. According to defendant, the ordinance has now been amended to provide for a voluntary retirement age of fifty-two years for fire fighters. This does not change our result. The key factor is not that recalculation of the disability pension corresponded to the fire fighter voluntary retirement age, but that at age fifty-five police officers and fire fighters can voluntarily retire. The recalculation thus comes at a time when those workers could be receiving retirement benefits but for their disability.

is consistent with language in both opinions. This Court characterized the disability benefits as "primarily retirement benefits." 120 Mich App at 323. The Supreme Court, in analyzing the SAC § 129 offset, noted that defendant's pension system is funded in part by mandatory wage contributions and that members of the pension system do not participate in the federal social security system. "We agree with the plaintiffs' contention that to deprive duty disabled retirees of their earned retirement income, after they have become 55 years of age, is contrary to the underlying purpose of the pension ordinance." 420 Mich at 385. Defendant's characterization of plaintiff's benefits would appear to deprive plaintiff of a pension plan he had paid into before becoming disabled.

We are aware that an apparently opposite conclusion was reached by a panel of this Court in *Johnson v Muskegon,* 61 Mich App 121; 232 NW2d 325 (1975). In *Johnson,* the plaintiff was receiving a duty disability pension provided for by the city charter. The opinion indicated that, at age fifty-five, the plaintiff "would be entitled to retirement pension benefits for the remainder of his life." *Id.* at 123. The *Johnson* Court apparently concluded that it had before it "periodic payments for disability." It is not clear from the opinion if the plaintiff had yet reached age fifty-five and thus whether the plaintiff's benefits had yet assumed the character of retirement pension benefits. To the extent that *Johnson* holds that retirement pension benefits are "like benefits" under § 161, however, we disagree with the holding.

III

Defendant argues that if we find that plaintiff's duty disability pension benefits are not "like bene-

fits," other offset provisions must necessarily come into play. We agree in part.

Defendant first argues that the SAC § 129 offset provision must apply if plaintiff's benefits are construed not to be disability benefits. While we find that plaintiff's benefits after age fifty-five are primarily retirement benefits, plaintiff nonetheless receives them pursuant to § 124 of the Saginaw ordinance. The clear wording of that ordinance and both *Bannan* opinions preclude operation of the SAC § 129 offset after the retiree attains age fifty-five.

We agree with defendant, however, that MCL 418.354; MSA 17.237(354) (§ 354) may be applicable. Section 354 provides in part:

> (1) This section is applicable when either weekly or lump sum payments are made to an employee as a result of liability pursuant to section 351, 361, or 835 with respect to the same time period for which old-age insurance benefit payments under the social security act, 42 U.S.C. 301 to 139f; payments under a self-insurance plan, a wage continuation plan, or a disability insurance policy provided by the employer; or pension or retirement payments pursuant to a plan or program established or maintained by the employer, are also received or being received by the employee. Except as otherwise provided in this section, the employer's obligation to pay or cause to be paid weekly benefits other than specific loss benefits under section 361(2) and (3) shall be reduced by these amounts:
>
> * * *
>
> (e) The proportional amount, based on the ratio of the employer's contributions to the total contributions to the plan or program, of the after-tax amount of the pension or retirement payments received or being received by the employee pursuant to a plan or program established or main-

tained by the same employer from whom benefits under section 351, 361, or 835 are received, if the employee did contribute directly to the pension or retirement plan or program. Subsequent increases in a pension or retirement program shall not affect the coordination of these benefits.

\* \* \*

(14) This section does not apply to any payments received or to be received under a disability pension plan provided by the same employer which plan is in existence on March 31, 1982. Any disability pension plan entered into or renewed after March 31, 1982 may provide that the payments under that disability pension plan provided by the employer shall not be coordinated pursuant to this section.

We concluded in part II that plaintiff's pension benefits are in the nature of retirement benefits. As such, § 354(1)(e) allows coordination of the pension benefits and workers' compensation benefits. Because of this retirement nature of plaintiff's pension benefits, § 354(14) does not remove plaintiff's pension from coordination even though it is termed a disability pension. Plaintiff cannot have it both ways. Our holding that after age fifty-five plaintiff's pension was primarily a retirement pension was to plaintiff's advantage. Since we do not view such benefits as "like benefits," § 161 does not apply to plaintiff's pension. Plaintiff cannot now argue that § 354 also does not apply because his pension is for disability. Section 354 represents a legislative enactment to remedy compensation abuses. See *Franks, supra* at 655-658. We will not thwart the Legislature's purpose by a disingenuous application of the exception to coordination found in § 354(14).

As discussed above in part I, the Supreme Court in *Franks, supra* at 651, permitted the application

of § 354 to workers' compensation payments made after the section's March 31, 1982, effective date, even though the employee was injured prior to that effective date. We disagree with plaintiff's assumption that the Supreme Court created an exception for governmental pension plans. 422 Mich 654, n 9. Coordination of workers' compensation benefits reduces only those benefits. Coordination has no effect on a claimant's pension benefits.

It appears that the applicability of § 354 may have been first raised in defendant's reply brief to this Court. MCL 418.354(9); MSA 17.237(354)(9) provides that receipt of pension benefits and the like after March 31, 1982, during a period in which the employee received unreduced workers' compensation benefits is considered to have created an overpayment of compensation benefits subject to reimbursement. On remand, the WCAB may determine the applicability of coordination pursuant to § 354.

Plaintiff has indicated to this Court that he is also entitled to supplemental workers' compensation benefits pursuant to MCL 418.352(1); MSA 17.237(352)(1). On remand, the WCAB may also determine plaintiff's entitlement to such benefits. We note that these benefits are not subject to the § 161 election or the SAC § 129 offset. Nor are they subject to coordination under § 354. *Franks, supra* at 660.

In summary, plaintiff's duty disability pension is provided for by ordinance rather than charter. Prior to July 24, 1983, § 161 of the workers' compensation act was inapplicable to such benefits. While § 161 applies to payments made after that date, plaintiff's pension became primarily a retirement benefit when he reached age fifty-five. As such, the pension benefits plaintiff receives are no longer "like benefits" within the meaning of § 161,

and plaintiff need not elect between benefits. As they are duty disability pension benefits, the payments may not be offset against plaintiff's workers' compensation benefits under SAC § 129. After March 31, 1982, plaintiff's workers' compensation payments were subject to the coordination provision of § 354. The exact application of that section remains for the WCAB to decide.

Accordingly, we affirm the WCAB's decision and remand to the WCAB for further proceedings consistent with this opinion.