Cavanagh, J.
(dissenting). I am unpersuaded that the plaintiffs continued to receive “like benefits” as defined by MCL 418.161(l)(c) after reaching the twenty-five-year reduction. Therefore, I must respectfully dissent from the majority’s holding. Moreover, I cannot agree with the majority’s implication that, once an employee has chosen to receive benefits under a municipal plan, he is thereafter precluded from challenging the benefits he receives as not being “like benefits” under the Worker’s Disability Compensation Act. I would hold that the benefits the plaintiffs received before the twenty-five-year reduction were “like benefits” for the purposes of § 161, but that the reduced benefits received thereafter were not “like benefits.” Therefore, I would reverse.
i
The Detroit City Charter provides the following with respect to disability pensions:
Part B—Total Disability Pension and Retirement Allowances.
Sec 1. Duty disability
If a member shall become totally incapacitated for duty by reason of injuiy, illness or disease resulting from performance of duty and if the Board of Trustees shall find such injuiy, illness or disease to have resulted from the performance of duty, on written application to the Board of Trustees by or on behalf of such member or by the head of his Department such member shall be retired; notwithstanding that during such period of notification he may have separated from service; provided, the Medical Director, after examination of such member shall certify to the Board of *18 Trustees Ms total incapacity. If said member was separated from service after filing of the written application, and he had attained 25 years or more of service prior to the date of separation, the Board of Trustees, shall retire said member, under tMs part B (As amended November 5, 1968. In effect January 1, 1969).
Sec 2. Benefits
A member, as defined under article IV, section 1(a), (b), or (c) retired under section 1 above shall receive the following benefits:
(a) If such member shall not at the time of Ms retirement have a total of twenty-five years of creditable service, he shall receive a disability pension of sixty-six and two tMrds percent of Ms final compensation at the time of Ms retirement.
(b) If such member, at the time of Ms retirement, shall have a total of twenty-five years or more of creditable service or on the expiration of the period when a member retired and receiving benefits under (a) above would have such total had he continued in active service, he shall receive a reduced disability allowance computed in the same manner as the allowance provided in Part A of tMs Article with optional benefits as provided in Part H of tMs Article. [Tit IX, ch VII, art VI.]
The present plaintiffs were retired because of disability at times when each had not attained twenty-five years of creditable service. Each employee received two thirds of his final compensation at the time of retirement in accordance with art VI, part B, § 2(a) of the city charter.
However, the plaintiffs’ benefits were reduced pursuant to § 2(b) of the city charter when each plaintiff reached what would have been twenty-five years of creditable service. The amount of “reduced disability allowance,” by the terms of subsection (b)’s reduction provision, was “computed in the same manner as the allowance provided in Part A of this Article with *19 optional benefits as provided in Part H of this Article.” Part A is entitled “Service Retirement Allowance,” and discusses the standard retirement allowance.[1]
The plaintiffs initially received the two-thirds disability allowance provided by § 2(a) in lieu of receiving worker’s compensation benefits. Those payments are not at issue on appeal. The issue on appeal, instead, is the contention that the plaintiffs were impermissibly reduced pursuant to § 2(b). According to the plaintiffs, they were entitled to receive both worker’s compensation benefits and municipal benefits be-
cause the benefits received by the plaintiffs under the municipal plan were changed from injury-based benefits to retirement benefits when each plaintiff had twenty-five years of creditable service. The defendants contend that § 2(b) is part of an overall disability retirement plan under which the plaintiffs elected to receive benefits after they were injured. Thus, the defendants argue, the benefits provided in the plan are akin to worker’s compensation benefits, and the plaintiffs are precluded from receiving “dual” benefits by § 161 of the wdca.
Thus, in order to fully analyze the parties’ arguments, it is necessary to examine the language of the municipal plan under which the plaintiffs are currently entitled to receive benefits, to consider the language of limitation used in § 161, and to determine whether that language of limitation allows the plaintiffs to recover benefits under both the municipal plan and under the wdca. The language of the charter *20 is provided above. The disputed statutory “election provision” of § 161(l)(c) reads as follows:
Police officers, fire fighters, or employees of the police or fire departments, or their dependents, in municipalities or villages of this state providing like benefits, may waive the provisions of this act and accept like benefits that are provided by the municipality or village but shall not be entitled to like benefits from both the municipality or village and this act . . . [Emphasis added.]
Further, the act discusses municipal charters by providing that:
This act shall not be construed as limiting, changing, or repealing any of the provisions of a charter of a municipality or village of this state relating to benefits, compensation, pensions, or retirement independent of this act, provided for employees. [Id.]
With charter and statute in hand, we can turn to the question whether MCL 418.161(l)(c) allows the city of Detroit to deny the payment of worker’s compensation benefits to the plaintiffs solely because they elected to receive duty disability pension benefits pursuant to § 2(a) of the city charter in lieu of wdca benefits. Stated alternatively, the question is whether the conversion of the officers’ pensions to reduced disability allowances after twenty-five years of service changed the benefits so that they were no longer “like benefits” for the purposes of § 161. The crux of plaintiffs’ argument is that the benefits were not “like benefits” under § 161 because they were converted from disability benefits to retirement benefits. According to the defendants, the municipal plan benefits were “like benefits” at the time of election, and retained their character as “like benefits” after the reduction be *21 cause the benefits were created as part of an overall plan designed to be “like” the wdca formulation.
n
In the majority’s words, “The plain language of MCL 418.161(l)(c), requires a disabled police officer to choose either WDCA benefits or ‘like benefits’ provided by a municipality or village. By accepting ‘like benefits,’ an officer elects the entire municipal plan.” Ante at 16. However, nothing in the statutory language provides that an employee may elect a benefits plan and that if he does so, he is forever precluded from asserting that the payments being made to him by the city are not “like benefits.” The majority’s assertion that “[e]mployees must elect an entire plan and may not ‘re-elect’ wdca benefits after they have waived its provisions,” is unsupported by either authority or analysis. Ante at 7. Although the opinion asserts that a “contextual” reading of the statute supports the approach, nothing in the text or context of the statute says anything about all-encompassing plans. Rather, the statutory language provides only that designated employees shall not be entitled to receive “like benefits” from the municipality and under the wdca at the same time.
Under the majority’s approach, an employee is able to elect an overall plan by accepting payment from the city under the city’s municipal plan. Thereafter, the employee could be bound to accept virtually anything the city offers as part of the plan, regardless of whether the nature of the benefits changes and regardless of whether the benefits are like in kind or purpose to the benefits offered by the wdca. I am unconvinced that the majority’s approach is sup *22 ported by the language of the wdca. Further, the majority ignores our duty to recognize that the wdca is a remedial statute that should be liberally construed in favor of the employee, and must be construed to grant rather than deny benefits. Hagerman v GenCorp Automotive, 457 Mich 720; 579 NW2d 347 (1998); Sobotka v Chrysler Corp (After Remand), 447 Mich 1, 20, n 18; 523 NW2d 454 (1994).[2]
*23 Subsection (l)(c) of § 161 allows injured police officers and firefighters, such as the plaintiffs, to choose whether they wish to receive “like” benefits under a municipal plan rather than under the WDCA. If a plaintiff chooses to receive benefits from the municipality, and those benefits are “like benefits,” then § 161(l)(c) operates to bar the employee from receiving payment under the WDCA. While the statutory language makes it clear that the plaintiffs cannot simultaneously receive “like benefits” under the WDCA and the municipal charter, it also implicitly provides that an employee is entitled to receive both worker’s compensation benefits and municipal benefits when the two benefits are not like in kind.
Because § 161 does not define the phrase “like benefits,” we are left to examine the statutory language and take guidance from precedent. As the majority acknowledges, this Court long ago stated that the determination whether benefits are “like” hinges on whether the benefits are similar in “salient features” considering the full scope of the benefits. MacKay v Port Huron, 288 Mich 129; 284 NW 671 (1939). Though MacKay was decided under a prior version of the WDCA, I agree with the majority’s use of the salient features test under the current version of the WDCA. However, in my view, our duty to consider the full scope of the benefits requires that we analyze the salient features of the particular benefits currently being received and challenged, and not only at the benefits received because of an initial election made by a particular plaintiff.
While the fact that the benefits associated with an overall benefit plan may be relevant to our determination of whether particular benefits share salient fea *24 tures, I do not believe that a plaintiffs decision to elect benefits under a municipal plan forecloses a determination that a particular benefit rendered under the plan inadequately addresses the interests intended to be protected by the wdca. In other words, simply because one aspect of a municipal plan provides benefits that are “like benefits” because they have salient features similar to benefits available under the wdca, it does not follow that every benefit allocation made in a municipal plan should automatically be considered a like benefit. I believe that duty binds us to carefully examine the reduced disability benefits the plaintiffs are currently receiving and to determine whether those benefits have salient features similar to the benefits that would be available to the plaintiffs under the wdca.
Further, I strongly disagree with the majority and the defendant that the “waiver” language of § 161 refers to waiver in the sense that the plaintiffs are barred from asserting a claim of inadequate compensation if they “elect” the city plan. The waiver provision is associated with the election provision. It is true that an injured employee may choose between benefits. It is also true that an employee who chooses between “like benefits” waives entitlement to benefits under the alternative plan. However, the employee does not waive WDCA protection for other benefits. Thus, the city has no right to reduce a plaintiff’s overall entitlement to a degree that the benefits are no longer “like benefits.”
m
In the instant case, the plaintiffs base their claim on the theory that once their benefits were reduced, *25 they were put on a par with nondisabled retired employees. Thus, in plaintiffs’ view, their reduced disability allowances were actually in the nature of retirement benefits rather than in the nature of disability compensation benefits. As such, the benefits were not “like benefits” for the purposes of § 161. I agree with the plaintiffs.
In my view, the “reduced disability allowance” provided to the plaintiffs after twenty-five years of service does not share salient features with the disability-based benefits recoverable under the WDCA. Though the benefits are called a “disability” allowance, it is clear that the purpose of § 2 (b) is to place disabled retirees on a par with other retirees. In their brief, the defendants argue that the plaintiffs should not be entitled to a windfall that would allow them to receive more money after twenty-five years of creditable service than would be received by their nondisabled retired counterparts. The fundamental flaw in the defendant’s logic is that the defendant argues that the plaintiffs’ retirement has been fairly structured, but nonetheless claims that the benefits received after twenty-five years of service are akin to wdca benefits. If the defendant’s argument is accepted, then the conclusion that follows is that employees receive no compensation for their disabilities after they reach the point when they would have put in twenty-five years of service.[3] If the wdca would continue to pro *26 vide benefits after that point, the charter fails to provide a “like” benefit.
Under the city of Detroit Charter, several aspects of disability payment change once an employee would have had twenty-five years of creditable service. Most obviously, the amount of payment received by the plaintiff is reduced. Although MacKay noted that the quantitative amount of benefits need not be exactly the same under a city plan and under the wdca in order to constitute a “like benefit,” MacKay also recognized that the full scope of benefits must be considered. In this case, the purpose of the quantitative reduction was to put disabled officers who would have had twenty-five years of service into the same retirement payment category as nondisabled officers. This is clearly evidenced by the fact that the charter states that an officer’s “reduced disability allowance” is to be “computed in the same manner as the allowance provided in Part A of this Article . . . .” Part A of the article provides the standard retirement plan. Moreover, at the point when an officer’s disability allowance is reduced, he is no longer required to undergo a medical examination to certify his continued disability.[4] This further provides evidence that the *27 plaintiffs’ status as disabled officers has little bearing on the payments they receive after twenty-five years of creditable service.
This Court has not taken up the exact question presented by this case, but in Bannan v Saginaw, 420 Mich 376; 362 NW2d 668 (1984), we considered a city ordinance that adjusted plaintiffs’ pension benefits when they reached fifty-five years of age. With regard to the benefit reduction, this Court stated, “We agree with the plaintiffs’ contention that to deprive duty disabled retirees of their earned retirement income, after they have become 55 years of age, is contrary to the underlying purpose of the pension ordinance.” Bannan at 385; see also Hatton v Saginaw, 159 Mich App 522, 532; 406 NW2d 871 (1987). Though Bannan is not directly on point because it held § 161 to be inapplicable on the grounds that the pension reduction at issue occurred pursuant to a city ordinance rather than a city charter, the overall logic of Bannan is persuasive and its message rings loudly. In the present case, depriving the plaintiffs of their disability benefits after they logged twenty-five years of service would be contrary to the purposes behind plans that compensate officers injured while carrying out their *28 duties. Thus, I would apply Barman by analogy and consider the city of Detroit Charter in light of the purposes behind compensating injured officers.
The defendant is clearly attempting to avoid making double payments to the plaintiffs. However, I am unconvinced that the they are simply attempting to avoid paying double disability payments as might potentially be precluded by § 161. Rather, I am persuaded that the defendants are attempting to avoid making simultaneous retirement payments and disability payments to injured employees. Perhaps the employer would have recourse under a different section of the wdca, but I do not believe that the remedy lies in § 161 because the benefits being sought are not “like benefits.” I would therefore carry out our duty to liberally interpret the wdca in favor granting benefits, Hagerman; Sobotka, supra, and grant the relief requested by the plaintiffs in this case.
Weaver and Kelly, JJ., concurred with Cavanagh, J.

 In other words, part A is not disability based.

 The majority criticizes my citation of a rule that pertains to construction of the wdca. Yet, this Court has explicitly stated that “[cjertain general principles govern any inquiry into the applicability of a provision of the worker’s compensation act. . . . First, the worker’s compensation act is remedial in nature, and must be ‘liberally construed to grant rather than deny benefits.’ ” Hagerman at 739 (emphasis added); see also DiBenedetto v West Shore Hosp, 461 Mich 394, 402; 605 NW2d 300 (2000) (citing the remedial rule as supplemental to and not in contravention of the rules offered by the majority). Despite this mandate, the majority would sidestep the rule, and substitute its own preferred approach.
Worse, though the majority claims to merely apply the statute as written, labeling statutory language unambiguous does not make it so. As pointed out in this opinion, the text of the statute itself makes no mention of municipal “plans.” The majority implicitly engages in construction, and interprets the statute as meaning that the purpose of § 161(l)(c) is to allow municipalities to create plans that serve as an alternative form of disability compensation. The majority arrives at a statutory meaning only after construing the context of and purposes behind § 161(l)(c). Not surprisingly, the fruit of the hunt is a statutory meaning that supports the policy concerns expressed at great length by the majority. Ante at 12-16.
Despite the majority’s distaste for the idea that officers who have been disabled while acting in the line of duty and thereby been prevented from continuing in active service might receive compensation greater than that of their “able-bodied” counterparts, it is not for this Court to declare that such a result would be unjust. In fact, making such a determination flies in the face of Michigan’s disability compensation system. The worker’s compensation act is designed to balance various competing considerations; among other factors, the wdca accounts for the fact that an employer may have limited resources to pay for debilitating personal injuries incurred on the job, the fact that under the wdca injured employees have no right to sue under negligence principles, and the fact that such employees may have lost the ability to work and advance in their fields of choice. See MCL 418.131(1) and DiBenedetto, supra. While § 161 (l)(c) provides municipalities, as self-insurers, to further similar purposes through their own plans, it only bars dual benefit recovery for like benefits.

 The majority criticizes this approach by concluding that municipalities would be discouraged from creating beneficial municipal plans and that individual employees would be encouraged to become disabled. I disagree with both of these criticisms. First, my approach provides for nothing more than the wdca itself. Municipalities will not be discouraged from providing municipal plans under my approach; rather, they will be encouraged to provide like benefits. Second, I do not share the majority’s *26 fear that employees will be motivated to injure themselves to the point of disability so that they will be entitled to disability payments thereafter. In any event, if an employee does become disabled late in his years of service, the payment he would receive under the approach I offer would not be an enhanced retirement benefit. Instead, it would be the standard retirement benefit provided by the municipal plan, plus any non-like disability benefit available to any disabled employee under the wdca.

 Further, a change in the method of benefit calculation also occurs. In Wiedmaier v Comm’r of the IRS, 774 F2d 109 (CA 6, 1985), the court held that payments received by an injured fireman after twenty-five years of service were nothing more than a retirement allowance, and were not excludable from gross income as benefits in the nature of workmen’s compensation. The court reasoned:
*27 The clear purpose of the [ies] regulation is to distinguish between benefits that are intended to compensate an employee for lost earning capacity due to an itvjury . . . and those benefits that are simply a retirement pension in consideration for past services. . . . Under that case, once the twenty-fifth anniversary step-down occurs, the ies will treat the pension as part of gross income.
[Id. at 111.]
As in Wiedmaier, the Detroit post-twenty-five-year pension for disabled employees is calculated in precisely the same way as a normal retired person’s pension is calculated. Wiedmaier is persuasive, and tends to support the conclusion that the benefits being challenged in this case are not like benefits.