*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH S. BELL,

   Plaintiff-Appellant,

v

CITY OF SAGINAW,

   Defendant-Appellee.

UNPUBLISHED
May 21, 2019

No. 341858
MCAC
LC No. 14-000081

Before: SWARTZLE, P.J., and M. J. KELLY and TUKEL, JJ.

PER CURIAM.

Plaintiff Joseph S. Bell appeals by leave granted[1] the opinion and order of the Michigan Compensation Appellate Commission (MCAC) affirming an opinion and order entered by the workers' compensation magistrate. The magistrate awarded plaintiff wage-loss benefits for 2013, denied wage-loss benefits for 2012 and 2014, and ruled that plaintiff would not be eligible for future wage-loss benefits until he reinitiated a good-faith search for alternate employment. Finally, the magistrate held that any wage-loss benefits for which plaintiff might become eligible in the future would be subject to coordination with his pension benefits under Section 354 of the Workers' Disability Compensation Act (WDCA), MCL 418.354. We affirm.

## I. BACKGROUND

Plaintiff became employed by defendant as a firefighter in 1984 and held various positions within the fire department throughout approximately 28 years of employment. In October 2011, plaintiff suffered a shoulder injury while fighting a structure fire. Plaintiff underwent various medical evaluations and was off work until March 2012. Plaintiff filed a

---

[1] *Bell v Saginaw*, unpublished order of the Court of Appeals, entered August 20, 2018 (Docket No. 341858).

claim for worker's compensation benefits, alleging that he suffered a work-related injury. Defendant paid plaintiff wage-loss benefits during the time he was off work.

Although his shoulder injury had not improved, the city sent plaintiff back to work while he continued with physical therapy. After his return to work, plaintiff was promoted from the rank of captain to the rank of battalion chief. According to plaintiff, after his return to work, he responded to some fires in a supervisory capacity, but purposely avoided wearing an oxygen tank, entering or fighting fires, or repetitively using his arms to pull a fire hose or swing an ax. In April 2012, however, during plaintiff's annual physical examination, the city's doctor concluded that plaintiff was unfit for full duty because he was unable to perform several essential job functions required of fire department personnel and because he would pose a direct threat to himself and others if he attempted to perform his job. The city therefore removed plaintiff from duty. The city's police and fire retirement system granted plaintiff a non-duty-disability pension. When plaintiff submitted the required medical documentation, the pension system granted him a duty-disability pension. The monetary benefit that plaintiff received under the duty-disability pension was equal to the benefit he received under the non-duty-disability pension.

Plaintiff continued to seek workers' compensation benefits after he began receiving his duty-disability-pension benefits. The workers' compensation magistrate found that plaintiff's shoulder injury was work-related but that his neck injury, which presented a few days after the shoulder injury, was not work-related. The magistrate also found that plaintiff was subject to various physical restrictions because of his work-related injury. These physical restrictions prevented plaintiff from lifting more than 10 pounds with the right arm and from repetitive reaching and above-shoulder work with the right arm.

The magistrate noted that two employment experts testified about plaintiff's potential employment opportunities and identified a list of jobs that plaintiff could perform despite his physical restrictions. The record indicates that Michele D. Robb, a vocational rehabilitation consultant, and Marcy Slabey-Klar, a certified rehabilitation counselor, both worked with plaintiff to identify transferable skills and available employment. Plaintiff reported to Robb and Slabey-Klar that his maximum wages as a firefighter were approximately $25 per hour.

First, Robb opined that plaintiff had no transferable skills because his skills from a career as a firefighter were industry specific. Although she opined that plaintiff could perform the administrative functions of the battalion chief position, she acknowledged that the position of battalion chief required an individual to perform the full duties of a firefighter in an unrestricted capacity, which plaintiff was unable to perform with his physical restrictions. Therefore, Robb testified that plaintiff suffered a diminution in his ability to earn his prior maximum wage because of his physical restrictions. Although she was able to identify unskilled-labor positions within plaintiff's physical restrictions, all of those jobs paid less than plaintiff's maximum wage-earning capacity in his former employment as a firefighter. Robb therefore concluded that plaintiff did not retain a residual-wage-earning capacity. Second, Slabey-Klar concluded that plaintiff had a variety of transferable skills and that she found a variety of employers that were hiring for positions matching plaintiff's qualifications and physical restrictions. After completing four labor-market searches, she concluded that plaintiff could earn between $13.30 and $30.13 per hour, even with his physical restrictions.

After reviewing this testimony, the magistrate concluded that plaintiff was "unable to perform work at his maximum wages in an unrestricted capacity." The magistrate, however, found that plaintiff was qualified to perform a number of different jobs within the applicable salary range and within plaintiff's work-restrictions. Contrary to plaintiff's claim on appeal, the magistrate did not find that the only job plaintiff was capable of performing at his maximum wages was that of a captain in the fire department.

Additionally, the magistrate concluded that plaintiff made a good-faith effort to find employment in 2013 but that plaintiff could not substantiate a good-faith effort to find employment in either 2012 or 2014. The magistrate therefore concluded that plaintiff was not entitled to wage-loss benefits after January 2014 and that "the residual wage earning capacity determination is moot" because plaintiff was not eligible to receive ongoing worker's compensation benefits until he reinitiated a good-faith employment search.

Regarding plaintiff's pension benefits, Kenneth Alberts, an actuarial consultant who performed an actuarial valuation of the city's police-fire pension system, testified that when an individual receives both workers' compensation benefits and a duty-disability pension from the city, the workers' compensation benefits are paid first and the pension payment was reduced by the amount of wage-loss benefits payable under workers' compensation. Beth Church, the city's director of human resources, testified that plaintiff received $80,547.22 per year from his duty-disability pension. Church also testified that, under the city's pension ordinance, a firefighter's duty-disability pension is offset by the amount of any payments he receives through workers' compensation benefits. Defendant also submitted as a trial exhibit a letter from Church to plaintiff noting that the city recomputed his duty-disability-pension benefits upon his attainment of age 50, in accordance with § 16.18 of the city's pension ordinance. Although this recomputation of benefits produced an annual pension payment of $75,056.41, less than the $80,547.22 that plaintiff had been receiving under his duty-disability pension, § 16.18(B) of the pension ordinance entitled plaintiff to continue receiving the higher benefit amount. Therefore, plaintiff continued to receive the higher pension payment as calculated under the duty-disability pension provisions.

The magistrate determined that plaintiff's original application for a non-duty-disability pension did not qualify as an election of "like benefits" for the purposes of MCL 418.161(c) because § 16.22 of the city's pension ordinance provided for the offset of benefits and, therefore, specifically contemplated that employees could be eligible for both a non-duty-disability pension and worker's compensation benefits. The magistrate concluded, however, that plaintiff was eligible for a regular age-and-service pension when he reached age 50. Relying on this Court's decision in *Hatton v Saginaw*, 159 Mich App 522; 406 NW2d 871 (1987), the magistrate held that plaintiff's duty-disability pension converted to a regular age-and-service pension when he reached age 50, and ruled that coordination of pension benefits and worker's compensation benefits was allowed under MCL 418.354(1)(e). Therefore, the magistrate concluded that any workers' compensation benefits for which plaintiff might become eligible in the future would be subject to coordination with his pension benefits under MCL 418.354.

Plaintiff appealed the magistrate's decision to the MCAC, which affirmed. Plaintiff now appeals the decision of the MCAC to this Court as on leave granted. On appeal to the MCAC and to this Court, plaintiff has not challenged any of the magistrate's factual findings. Rather,

plaintiff argues that the MCAC erred as a matter of law in ruling that (1) his failure to search for employment within his qualifications and work restrictions disqualified him from receiving an open award of workers' compensation benefits, and (2) any workers' compensation benefits awarded to plaintiff in the future would be subject to coordination with his pension benefits under MCL 418.354.

## II. ANALYSIS

### A. STANDARD OF REVIEW

The Court's review of the MCAC's decision is very limited. Judicial review of a decision of the MCAC includes the determination whether "final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record." Const 1963, art 6, § 28. In the absence of fraud, this Court must affirm the MCAC's factual findings if they are supported by any competent evidence. *Id*.; *Schmaltz v Troy Metal Concepts, Inc*, 469 Mich 467, 471; 673 NW2d 95 (2003); see also MCL 418.861a(14). The reviewing court's primary function is to ensure that the MCAC "did not misapprehend its administrative appellate role (e.g., engage in de novo review; apply the wrong rule of law)." *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 703-704; 614 NW2d 607 (2000). This Court may not independently review the findings of fact made by the magistrate. *Id*. at 701. In contrast, the MCAC reviews the magistrate's factual findings for "competent, material, and substantial evidence on the whole record." MCL 418.861a(3). The MCAC is required to perform "both a qualitative and quantitative analysis of that evidence in order to ensure a full, thorough, and fair review." MCL 418.861a(13). If the MCAC finds that the magistrate's decision was not supported by substantial evidence, it may make independent factual findings. *Mudel*, 462 Mich at 699-700.

Although judicial review of a decision of the MCAC is limited, this Court reviews de novo questions of law that arise in a workers' compensation case. *Arbuckle v General Motors LLC*, 499 Mich 521, 531; 885 NW2d 232 (2016). A decision of the MCAC is therefore "subject to reversal if it is based on erroneous legal reasoning or the wrong legal framework." *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401-402; 605 NW2d 300 (2000).

### B. FAILURE TO SEEK ALTERNATE EMPLOYMENT

On appeal to this Court, plaintiff does not contest the magistrate's factual finding that he failed to substantiate a good-faith effort to find employment in either 2012 or 2014. Yet, plaintiff argues that the magistrate erroneously failed to determine what, if any, residual-wage-earning capacity plaintiff had during periods when he did not actively seek employment and that the magistrate erroneously failed to award him wage-loss benefits for those periods. Plaintiff points to the magistrate's ruling that he suffered a work-related disability that caused a reduction in his wage-earning capacity. Plaintiff argues that, in the face of such a ruling, the magistrate was required to determine his residual-wage-earning capacity. Plaintiff argues that the magistrate erroneously failed to calculate and award him partial benefits for 2012, 2014, and all years thereafter, so long as plaintiff's disability and wage loss continued, regardless of whether plaintiff made a good-faith effort to seek other employment. We conclude that plaintiff's argument is without merit.

-4-

The WDCA provides in part that "[a]n employee, who receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury, shall be paid compensation as provided in this act." MCL 418.301(1). "A workers' compensation claimant bears the burden of proving that he has a disability under MCL 418.301(4), and that burden does not shift to the employer." *Stokes v Chrysler LLC*, 481 Mich 266, 270; 750 NW2d 129 (2008). To establish a prima-facie case of disability, a claimant must prove the occurrence of a work-related injury that resulted in a "reduction of the claimant's wage-earning capacity in work suitable to his qualifications and training." *Id*. at 281.

To satisfy his burden of proof under the WDCA, a claimant must "do more than demonstrate that his work-related injury prevents him from performing a previous job." *Id*. A workers' compensation claimant must: (1) disclose his qualifications and training; (2) "prove what jobs, if any, he is qualified and trained to perform within the same salary range as his maximum earning capacity at the time of the injury"; (3) "show that his work-related injury prevents him from performing some or all of the jobs identified as within his qualifications and training that pay his maximum wages"; and (4) "if the claimant is capable of performing any of the jobs identified, the claimant must show that he cannot obtain any of these jobs." *Id*. at 281-283. Regarding the fourth prong of this test, the *Stokes* Court specified that the claimant "must make a good-faith attempt to procure post-injury employment if there are jobs at the same salary or higher that he is qualified and trained to perform and the claimant's work-related injury does not preclude performance." *Id*. at 283. "Upon the completion of these four steps, the claimant establishes a prima facie case of disability." *Id*. Only after the claimant has made that prima-facie showing does the burden shift to the employer "to come forward with evidence to refute the claimant's showing." *Id*. In this case, the magistrate held that plaintiff satisfied the first three prongs of the *Stokes* test but that plaintiff failed to satisfy the fourth prong of that test because plaintiff did not make a good-faith attempt to procure post-injury employment in 2012 and 2014. The MCAC affirmed the magistrate's conclusion that plaintiff was not eligible to receive workers' compensation benefits until he "once again establishes with probative evidence that he has made a good faith effort to seek employment to mitigate his wage loss."

On appeal to this Court, plaintiff argues that the magistrate and the MCAC improperly applied the fourth prong of the *Stokes* test. We conclude that the fourth prong of the *Stokes* test applies to plaintiff's claim for workers' compensation benefits and that the magistrate and MCAC correctly concluded that plaintiff was ineligible for benefits until he can demonstrate compliance with that fourth prong.

The magistrate identified a number of jobs plaintiff was qualified to perform within the same salary range as his maximum-earning capacity in his prior employment as a firefighter. Because the magistrate found that plaintiff was capable of performing some of the jobs identified, plaintiff was therefore required to satisfy the fourth prong of *Stokes* by showing "that he cannot obtain any of these jobs." *Id*. To do so, plaintiff was required to "make a good-faith attempt to procure post-injury employment" because there were "jobs at the same salary or higher that he is qualified and trained to perform and [his] work-related injury does not preclude performance." *Id*.

Plaintiff relies on *Harder v Castle Bluff Apartments*, 489 Mich 951; 798 NW2d 26 (2011), and *Vrooman v Ford Motor Co*, 489 Mich 978; 799 NW2d 17 (2011), to support his

argument that he is entitled to receive an open award of workers' compensation benefits even during time periods when he failed to make a good-faith effort to look for employment within his qualifications and training. In the *Harder* case, this Court denied the claimant's application for leave to appeal. *Harder v Castle Bluff Apartments*, unpublished order of the Court of Appeals, entered January 27, 2011 (Docket No. 298975). The Michigan Supreme Court then issued an order denying the plaintiff's application for leave to appeal from the decision of this Court. *Harder*, 489 Mich at 951. In that order denying leave to appeal, the Michigan Supreme Court stated that "the magistrate in this case found, and the record supports, that the plaintiff did not have the ability to earn wages within his qualifications and training, and the [MCAC] therefore properly affirmed the magistrate's decision." *Id*.

The Supreme Court's order denying leave in *Harder* cited *Lofton v Autozone, Inc*, 482 Mich 1005; 756 NW2d 85 (2008). In the *Lofton* case, this Court denied the claimant's application for leave to appeal. *Lofton v Autozone, Inc*, unpublished order of the Court of Appeals entered February 4, 2008 (Docket No. 277845). The Michigan Supreme Court then issued an order remanding the case to the workers' compensation magistrate for reconsideration of its decision in light of *Stokes*. *Lofton*, 482 Mich at 1005. The *Lofton* Court held that, if "it is found that the plaintiff is disabled under MCL 418.301(4), but that the limitation of wage-earning capacity it only partial, the magistrate shall compute wage loss benefits under MCL 418.361(1), based upon what the plaintiff remains capable of earning." *Id*.

Finally, in the *Vrooman* case, this Court denied the claimant's application for leave to appeal. *Vrooman v Ford Motor Co*, unpublished order of the Court of Appeals, entered February 17, 2011 (Docket No. 299340). The Michigan Supreme Court then issued an order remanding the case to the workers' compensation magistrate for additional findings of fact and conclusions of law. *Vrooman*, 489 Mich at 978. In doing so, the *Vrooman* Court cited *Harder*, 489 Mich at 951, and *Lofton*, 482 Mich at 1005. *Vrooman*, 489 Mich at 978.

*Harder*, *Lofton*, and *Vrooman* are distinguishable from the present case and therefore inapplicable. *Harder* involved a plaintiff who did not have the ability to earn wages within his qualifications and training. *Harder*, 489 Mich at 951. In contrast, the magistrate in this case identified several jobs that plaintiff was qualified to perform, in the same salary range as his maximum-earning capacity. *Lofton* discussed only a limitation of wage-earning capacity but did not discuss whether the claimant engaged in a good-faith attempt to find employment within his qualifications and training. *Lofton*, 482 Mich at 1005. In contrast, the magistrate in this case found that plaintiff did not substantiate a good-faith attempt to find alternate employment for the years in question. *Vrooman* did not specify the grounds on which the Court remanded the case to the magistrate for additional findings of fact and conclusions of law. *Vrooman*, 489 Mich at 978. The authorities cited by plaintiff do not support an argument that a plaintiff who fails to make a good-faith effort to look for employment is entitled to recover wage-loss benefits during the period when he fails to look for work.

In this case, plaintiff has not challenged the magistrate's factual finding that he failed to engage in a good-faith effort to look for qualifying employment in 2012 and 2014. Therefore, the MCAC did not err in concluding that plaintiff failed to satisfy the fourth prong of *Stokes*, and the MCAC appropriately affirmed the magistrate's conclusion that plaintiff remains ineligible to

receive workers' compensation benefits "until he once again establishes with probative evidence that he has made a good faith effort to seek employment to mitigate his wage loss."

## C. COORDINATION OF BENEFITS

Plaintiff next argues that the magistrate erroneously held that plaintiff's disability pension converted to a regular age-and-service pension once he reached age 50. Plaintiff concedes that he became eligible to apply for a regular age-and-service pension at the age of 50. He argues, however, that the magistrate only heard testimony that he was receiving a duty-disability pension and that there was no testimony in the record that the city would convert his duty-disability pension to an age-and-service pension at the age of 50 or any other age. As noted earlier, however, the record includes a letter from Church to plaintiff noting that his duty-disability-pension benefits were recomputed upon his attainment of age 50, in accordance with § 16.18 of the city's pension ordinance. Therefore, plaintiff's argument that there was no evidence in the record to support the magistrate's decision is without merit.

Plaintiff argues, nonetheless, that (1) the magistrate erred as a matter of law in ruling that plaintiff's disability pension converted to a regular age-and-service pension when he turned 50 years old and that as a result, it was subject to coordination of benefits under MCL 418.354; (2) Section 16.22 of the pension ordinance "states that any worker's compensation payable to a member retiree shall be offset against any pension"; and (3) statutory coordination under MCL 418.354(14) does not apply to plaintiff's pension.

In contrast, defendant argues that the magistrate and the MCAC correctly relied on this Court's decision in *Hatton* in ruling that any workers' compensation benefits to which plaintiff may become entitled are subject to coordination with his pension benefits. Defendant argued to the magistrate that, if plaintiff's pension benefits were not considered "like benefits" for purposes of MCL 418.161(c), then plaintiff's pension should be coordinated under MCL 418.354. The magistrate concluded that § 161(c) did not apply. As for coordination, the magistrate concluded that, before his fiftieth birthday, plaintiff's pension was offset by the amount of worker's compensation benefits received, but that coordination did not apply during that time period. Yet, the magistrate concluded that after his fiftieth birthday, plaintiff's "duty disability pension converts to a regular pension or are in the nature of retirement benefits" as defined by this Court in *Hatton*, which meant that MCL 418.354(1)(e) applied, and plaintiff's pension and workers' compensation benefits were subject to coordination.

The MCAC affirmed the magistrate's opinion on this point, stating:

> After plaintiff turned 50 years of age on March 3, 2014, pursuant to *Hatton, supra* and § 354, the defendant is able to coordinate the benefits paid to plaintiff against any workers' compensation benefits paid to him if that occurs in the future.

* * *

The record, in this case, demonstrates that plaintiff contributed approximately 25 percent toward the funding of his pension and the employer contributed

approximately 75 percent of the funding. Therefore, under § 354 and *Hatton, supra* the defendant is entitled to coordinate the pension benefits with any workers' compensation benefits received or liable for. The plaintiff's workers' compensation benefits paid or due shall be reduced by 75 percent of the pension received.

MCL 418.354 provides for coordination of benefits when an individual is receiving workers' compensation benefits at the same time that he or she is receiving "pension or retirement payments under a plan or program established or maintained by the employer." MCL 418.354(1). "Coordination of benefits serves to reduce the amount of weekly benefits an employer is legally obligated to pay an employee under the WDCA." *Smitter v Thornapple Twp*, 494 Mich 121, 126; 833 NW2d 875 (2013). If MCL 418.354(1) applies, "[t]he coordination of benefits is mandatory," subject to certain limitations not relevant here. *Id.* Benefits under disability-pension plans begun or renewed after March 31, 1982 are subject to coordination by virtue of MCL 418.354(14), but an employer may elect against exercising its right to coordinate benefits, in certain circumstances, such as when the employer enters into an employment agreement exempting benefits from coordination. See *Arbuckle*, 499 Mich at 536. Therefore, the question in this case is whether the city's pension plan exempted plaintiff's pension benefits from coordination with workers' compensation benefits. This is a question of law that this Court review de novo. See *id.* at 531.

The relevant portion of the city's pension ordinance addressing plaintiff's duty-disability pension states, "To his or her attainment of age . . . fifty (50) years for a firefighter member who retires on or after July 1, 1993, his or her disability pension shall be subject to §§ 16.21 and 16.22." Section 16.21, which requires ongoing physical evaluations regarding whether an individual's disability improves before retirement, does not apply to plaintiff. Section 16.22, however, deals specifically with worker's compensation. That section states in relevant part:

> (A) Any worker's compensation which may be paid or payable to a member retiree or beneficiary on account of the member's employment shall be offset against any pension payable to such member. . . .
>
> (B) Effective January 15, 1992, this section shall no longer be in effect for police patrol officers, however, for injuries after March 31, 1982, the coordination of pension and workers' compensation benefits will be subject to the provisions of the Workers Disability Compensation Act of 1969 (MCL 418.101 through 418.941). Further, pursuant to Section 161 of the Workers Disability Compensation Act (MCL 418.161), the initial election between duty disability pension and workers' compensation will find such workers' compensation benefit not falling below the July 1990 level.

In other words, when the various sections of the pension ordinance are considered together, the ordinance indicates that plaintiff's duty-disability pension was subject to an offset, until plaintiff reached the age of 50. Because § 16.22 of the pension ordinance identifies no further exclusions

past the age of 50, however, we conclude that the ordinance intended the coordination of benefits after plaintiff reached the age of 50.[2]

In this case, both the magistrate and the MCAC relied on this Court's opinion in *Hatton*. In that case, the plaintiff was a firefighter for the city of Saginaw who suffered a work-related injury. *Hatton*, 159 Mich App at 524. The city granted the plaintiff a duty-disability pension. Subsequently, the plaintiff applied for and was awarded workers' compensation benefits. *Id*. at 525. The magistrate held that the duty-disability pension did not constitute "like benefits" and that the plaintiff was not barred from receiving workers' compensation benefits under the election provision of MCL 418.161. *Id*. On appeal, this Court determined that the plaintiff's benefits under the city's pension ordinance were in the nature of retirement benefits, and thus did not qualify as "like benefits" under MCL 418.161. *Id*. at 534. As the *Hatton* Court stated:

> As such, § 354(1)(e) allows coordination of the pension benefits and workers' compensation benefits. Because of this retirement nature of plaintiff's pension benefits, § 354(14) does not remove plaintiff's pension from coordination even though it is termed a disability pension. Plaintiff cannot have it both ways. Our holding that after age fifty-five plaintiff's pension was primarily a retirement pension was to plaintiff's advantage. Since we do not view such benefits as "like benefits," § 161 does not apply to plaintiff's pension. Plaintiff cannot now argue that § 354 also does not apply because his pension is for disability. Section 354 represents a legislative enactment to remedy compensation abuses. We will not thwart the Legislature's purpose by a disingenuous application of the exception to coordination found in § 354(14). [*Id*. (citation omitted).]

Moreover, in *Sterner v McLouth Steel Prod*, 211 Mich App 354; 536 NW2d 225 (1995), this Court addressed whether a provision in the plaintiff's pension agreement barred the coordination of benefits. In that case, the plaintiff suffered a work-related injury and the defendant voluntarily paid him workers' compensation benefits. *Id*. at 355. The plaintiff later received both a permanent-incapacity-retirement pension and social-security-disability benefits, and the parties agreed that those benefits were not subject to coordination under MCL 418.354. *Id*. at 355-356. When the defendant began coordinating the plaintiff's workers' compensation benefits with his disability-pension benefits, the plaintiff objected to that coordination. *Id*. at 355. The applicable pension ordinance provided that workers' compensation benefits "shall not be deducted from any such amount for permanent incapacity retirement payable prior to age 65." *Id*. at 356.

The magistrate in *Sterner* held that this ordinance language barred coordination of the plaintiff's pension benefits before age 65. *Id*. at 356. The MCAC reversed that decision, holding:

---

[2] Although § 16.22(B) applies only to police officers, it further illustrates the city's intention to coordinate benefits for those individuals who are not otherwise granted an exception to coordination.

We must abide by the plain meaning of the language in section 3.10 of the Agreement. . . . The Agreement states that any worker's compensation benefits 'shall not be deducted from any such amount for permanent incapacity retirement payable prior to age 65.' In short, the pension plan prohibits a reduction in the pension payments due to the payment of worker's compensation benefits. It requires that the employee receive the full amount of his or her disability retirement income until he or she is age 65.

However, MCL 418.354 provides, not for a reduction in pension benefits, but for a reduction in worker's compensation benefits. The full amount of disability retirement income payable under the pension plan is not affected. . . . Therefore, coordination of plaintiff's worker's compensation benefits is not barred by application of MCL 418.354(14). [*Id.* at 356-357 (cleaned up).]

This Court reversed the MCAC, explaining that the MCAC "ignored the primary rule of construction of an ambiguous provision in a contract, which is to ascertain the intent of the parties." *Id.* at 357. Finding the ordinance language ambiguous, this Court concluded that "the parties must have intended to prohibit coordination before a recipient's sixty-fifth birthday because, otherwise, the provision would have been unnecessary." *Id*. at 358.

Applying this Court's decision in *Sterner*, we conclude that by limiting the setoff provision until age 50 and providing no further exclusions to the coordination of benefits, the goal of the city's pension ordinance was to prevent double recovery for wage loss. This goal is consistent with the objective of MCL 418.354. See *Rangel v Ralston Purina Co*, 248 Mich App 128, 136-137; 638 NW2d 187 (2001). Nothing in MCL 418.354 provides that plaintiff's pension is automatically exempt from coordination absent express exemption from coordination under the plan. Rather, the statute lists both pensions and retirement plans as subject to coordination. MCL 418.354(1). Absent an applicable exemption, regardless of whether plaintiff's pension is categorized as a disability pension or a retirement pension, plaintiff's pension remains subject to coordination in accordance with the legislative intent of preventing double recovery. "If the plan is silent on the subject, disability compensation benefits are subject to coordination." *Sterner*, 211 Mich App at 356.

In this case, the city's pension ordinance does not include a specific provision exempting plan members from coordination after they attain age 50. Subsequently, no exception to coordination existed. Absent such an exception, and given that plaintiff's disability pension plans began after March 31, 1982, it is subject to coordination by virtue of MCL 418.354(14). See *Arbuckle*, 499 Mich at 536. Therefore, the MCAC did not err in affirming the magistrate's conclusion that defendant will be able to coordinate worker's compensation benefits with plaintiff's pension should plaintiff qualify for worker's compensation benefits in the future.

Affirmed.

/s/ Brock A. Swartzle
/s/ Michael J. Kelly
/s/ Jonathan Tukel