*3 Corrigan, C.J.
In this case we are called upon to construe section 161(l)(c)[1] of the Worker’s Disability Compensation Act, MCL 418.161. Section 161(l)(c) authorizes municipalities and villages to offer injured police officers and fire fighters a form of compensation that, while like that provided through Michigan’s statutory worker’s compensation system, MCL 418.101 et seq., can be tailored to the needs of public safety officers. The statute allows officers to bargain collectively for beneficial alternatives to the otherwise mandatory state system.
Accepting the invitation of the Legislature, the city of Detroit provides an alternative benefits plan[2] in tit IX, ch VII, art VI, part B, § 2 of the Detroit City Charter. The charter grants payments during an officer’s working life (twenty-five years from the time service as an officer commenced) that exceed what the officer would receive under the wdca. But after the twenty-five-year period, described as the “creditable service” period, the officer receives the same amount *4 as an uniryured, retired officer. During this second benefit period, i.e., the “retirement” period,[3] the officer usually receives less than he would have obtained under the wdca.
I. UNDERLYING FACTS AND PROCEDURAL HISTORY
Detroit Officers Crowe, Conant, and Singleton, following work-related disabling injuries, accepted municipal disability benefits under the city charter. After twenty-five-years of creditable service, they each received the reduced benefit provided by the plan that they had selected. At that point, they sought to revoke their previous elections to avoid the retirement reductions discussed above.
Although they acknowledged having received the enhanced benefits under the city’s plan during the preretirement period, they sought to compel the city of Detroit to supplement the “retirement” benefit to match the comparable wdca benefit. In two of the proceedings, involving plaintiffs Conant and Crowe, the magistrate and the Worker’s Compensation Appellate Commission ruled in favor of defendants, reasoning that plaintiffs’ election of the entire municipal plan remained in effect and that § 161(l)(c) does not provide for a “re-election.”
In the third proceeding, involving plaintiff Singleton, the magistrate and the wcac ruled against defendant, relying on Hatton v Saginaw, 159 Mich App 522; 406 NW2d 871 (1987). Hatton held that disability benefits provided by the Saginaw City Charter *5 that are reduced when a worker reaches a certain age were not “like” wdca benefits. The wcac nonetheless agreed with the magistrate’s criticism of Hatton: § 161(l)(c) “is not intended to allow plaintiff the opportunity to jump between benefit programs as it suits his fancy or as benefits change.”
The Court of Appeals consolidated the plaintiffs’ cases and held that they could not alter their election in order to avoid the reduction in compensation after twenty-five years. Because defendant’s charter required the reductions, the Court of Appeals concluded that plaintiffs could not properly claim that they had been surprised:
While it is true that the amount of benefits plaintiffs now receive represents the same amount they would have received had they retired healthy after twenty-five years of service, it is also true that the amount they now receive remains governed by defendant’s charter provision regarding disability pensions. Although the amount plaintiffs receive has been reduced, that reduction constitutes part of defendant’s disability pension plan for police officers. The payments plaintiffs receive are still periodic payments for a disability. Consequently, we hold that the benefit payments plaintiffs received from defendant are “like benefits” under § 161(l)(c). [237 Mich App 397, 401-402; 603 NW2d 107 (1999).]
The Court of Appeals reasoned that the altered calculation of benefits did not change their nature.
We granted leave to consider whether plaintiffs may withdraw their waivers of wdca benefits.
We affirm the Court of Appeals decision rejecting plaintiffs’ arguments. By accepting “like benefits,” plaintiffs chose the entire disability plan provided in the charter, including reduction of benefits after *6 twenty-five years. The plain language of § 161(l)(c) does not allow plaintiffs to change their election.
n. STANDARD OP REVIEW
This case requires us to examine the text of § 161(l)(c). Statutory interpretation is a question of law that we review de novo. The Herald Co v Bay City, 463 Mich 111, 117; 614 NW2d 873 (2000). See also MCL 418.861a(14); Mudel v Great Atlantic & Pacific Tea Co, 462 Mich 691, 700; 614 NW2d 607 (2000).
m. ANALYSIS
The primary goal of statutory interpretation is to discern and give effect to the intent of the Legislature:
This task begins by examining the language of the statute itself. The words of a statute provide “the most reliable evidence of its intent. . . .” United States v Turkette, 452 US 576, 598; 101 S Ct 2524; 69 L Ed 2d 246 (1981). If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted. Tryc v Michigan Veterans’ Facility, 451 Mich 129, 135; 545 NW2d 642 (1996). [Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999).]
“Contextual understanding of statutes is generally grounded in the doctrine of noscitur a sociis: ‘[i]t is known from its associates,’ see Black’s Law Dictionary (6th ed), p 1060. This doctrine stands for the principle that a word or phrase is given meaning by its *7 context or setting.” Tyler v Livonia Public Schs, 459 Mich 382, 390-391; 590 NW2d 560 (1999).
Section 161(l)(c) plainly requires disabled officers to choose either wdca benefits or “like benefits” provided under a municipal plan. Employees must elect an entire plan and may not “re-elect” WDCA benefits after they have waived its provisions.
A contextual reading of § 161(l)(c) supports this interpretation. The statute allows officers in “municipalities or villages . . . providing like benefits” to “waive the provisions of this act and accept like benefits that are provided by the municipality or village but [officers] shall not be entitled to like benefits from both the municipality or village and this act . . . .” This text contemplates an election of a plan. The Legislature plainly distinguished municipalities that provide “like benefits” from those that do not. This distinction is based on whether a municipality provides a plan. It does not refer to individual payments or discrete provisions of a plan.
Similarly, the statute provides that an officer who elects “like benefits” “waives the provisions of this act.” The statute does not call for waiver of some wdca benefits; it requires a waiver of the provisions of the wdca itself. Had the Legislature intended to allow employees to change an election or to waive some, but not all, benefits, it would not have referred to a waiver of the provisions of the wdca generally. Indeed, with regard to medical expenses, the Legislature limited the effect of the waiver providing, “this waiver shall not prohibit such employees or their dependents from being reimbursed under section 315 for the medical expenses or portion of medical *8 expenses that are not otherwise provided for by the municipality or village.” MCL 418.161(l)(c).
Moreover, the statute expressly states that a claimant “shall not be entitled to like benefits from both the municipality or village and this act . ...” A claimant who participates in the municipal plan thus cannot claim wdca benefits.
In these cases, plaintiffs do not dispute that they opted for and accepted benefits under the municipal plan.[4] By accepting those benefits, plaintiffs elected the municipal plan in its entirety and waived the provisions of the wdca. They weighed the benefits and detriments of the wdca and the municipal scheme, and chose the more advantageous plan.[5] Having made that choice, they now seek to withdraw from the bargain because their retirement benefits are less than they would have been under the wdca.
Plaintiffs and the dissent ignore the plain language of § 161(l)(c). They compare the WDCA alternative plan with the city’s other municipal plan. The statute, however, directs us to compare the alternative wdca plan with WDCA benefits, not to compare one municipal plan with another municipal plan.
The question remains, nevertheless, whether disability benefits provided by defendant’s charter are “like” wdca benefits. We believe that they are. Our decision in MacKay v Port Huron, 288 Mich 129; 284 NW 671 (1939), offers guidance that helps lead us to *9 this conclusion. In MacKay, a firefighter’s widow accepted a monthly pension under a city charter. While still receiving this pension, she sought wdca benefits. The pension was based on “the amount of retirement salary that her deceased husband would have received had he lived and been placed upon the retirement list at the date of his death.” Id. at 132. This Court found the pension sufficiently similar to worker’s compensation benefits:
The term “like benefits,” employed in the statute, does not mean identical benefits or co-extensive in every detail but, considering the full scope thereof, similar in its salient features. The charter benefit of $75 a month, or $900 per year, continues for life, unless plaintiff remarries, while the compensation award of $18 per week, or $936 per year, carries, if there is no remarriage, for 300 weeks at the longest. The $36 per year difference, if considered an inequality, loses sense as such when we give consideration to the time of continuance of each benefit. The statute provides for funeral expenses and the charter benefit does not but this was waived in taking the longer time benefit. [Id. at 134.]
Where one has a right of election to take either of two benefits but not both, and is accorded and accepts and is receiving one, there is waiver of the other. [Id. at 135.]
Further, in Johnson v Muskegon, 61 Mich App 121; 232 NW2d 325 (1975), the Court of Appeals held that the city’s disability retirement pension provision was “like” the wdca provisions even though the pension provision did not include medical insurance:
The salient feature in MacKay was held to be precisely the salient feature in the case at bar, periodic payments for disability- Further, we cannot say that the absence of medical benefits is such an “inequality” as to exclude the operation of the statute. Like MacKay, the benefits in this case are not “identical” or “co-extensive in every detail,” nor are *10 they required to be. Just as the plaintiff in MacKay waived the funeral expenses benefit by electing to receive the pension, so too did the plaintiff in the case at bar waive the medical benefits by accepting the longer benefits under the disability pension. [Id. at 126.][6]
We reaffirm the principles articulated in MacKay and Johnson. The statute does not require that municipal benefits be identical or coextensive in every detail with wdca benefits. Rather, municipal benefits must be “like” wdca benefits. Under MacKay, “like benefits” are those that are similar in their salient features.
The municipal benefits accepted by plaintiffs here meet this test. Like the wdca, defendant’s charter provides a total package including periodic payments for disability and payments for the period after creditable service, i.e., retirement. While the municipal benefits are not precisely identical in amount or method of calculation to wdca benefits—because they are sometimes higher and sometimes lower—they are “like benefits” as this Court and the Court of Appeals have interpreted that phrase.[7] Thus, under the plain lan *11 guage of § 161(l)(c), they need not be identical. MacKay, supra.
One cannot rely on one component of the plan, such as the recalculation under the charter after twenty-five years of creditable service. Rather, the relevant inquiry is the nature of the entire plan, not its discrete components.
For several reasons, Hatton is not reliable authority to be applied in the instant cases. Significantly, the benefit plan in Hatton allowed an employee to receive both plan benefits and worker’s compensation benefits. The terms of the Saginaw plan are discussed in Hatton and in Bannan v Saginaw, 420 Mich 376; 362 NW2d 668 (1984), aff'g Bannan v Saginaw, 120 Mich App 307; 328 NW2d 35 (1982). Furthermore, without much in the way of meaningful analysis, Hatton disagreed with the prior decision in Johnson, supra. See Hatton, supra at 532. Yet the Johnson decision relied on a Supreme Court decision, namely, MacKay, supra. In addition, for part of its analysis Hatton was guided by Franks v White Pine Copper Div, 422 Mich 636; 375 NW2d 715 (1985) [which the Legislature has repudiated], ... In sum, Hatton is not meaningful authority for deciding the issue before us, which concerns a benefit plan established by the city charter of Detroit. [237 Mich App 403-404.]
Hatton and Teddy are distinguishable. Teddy involved a deceased state police officer; § 161(l)(c) by its plain terms applies to officers in municipalities or villages. Hatton involved interpretation of the Saginaw City Charter. That charter contained language not present in the Detroit Charter. We decline to construe the Saginaw Charter; it is not before us. Thus, the Hatton and Teddy cases did not depend necessarily on an analysis that is inconsistent with our holding in this case.
Plaintiffs also cite Wiedmaier v Comm’r of Internal Revenue, 774 F2d 109 (CA 6, 1985). In that case, the court held that after twenty-five years of creditable service, the reduced pension provided by the Detroit Charter is a retirement allowance and thus “income” for tax purposes.
The issue here differs from that decided in Wiedmaier. In considering whether municipal benefits are “like” wdca benefits, we are bound by the plain language of § 161(l)(c). A federal court’s interpretation of a federal tax regulation does not control our analysis of the text of a provision of our wdca.
*12 IV. RESPONSE TO THE DISSENT
The dissent contends that our approach would allow a municipality to change its plan after the option was chosen “regardless of whether the benefits are like in kind or purpose to the benefits offered by the wdca.” Post at 21. We reject this characterization. We do not hold that a city may offer “virtually anything” “regardless of whether the benefits are like in kind or purpose to” wdca benefits. Instead, we have followed the plain language of § 161(l)(c) and our decision in MacKay, which is, to repeat, that a municipal plan must offer “like” wdca benefits, i.e., similar in its salient features.
The statute does not refer to discrete components of a plan or to individual payments of benefits. It refers generically to “like benefits” that are provided by “municipalities or villages of this state.” The statute directs that a disabled officer who elects “like” municipal benefits waives “the provisions of the wdca” itself. This statutory directive means that we must compare an entire municipal plan to the wdca. The municipal plan here is similar in its salient features to the wdca because it provides periodic payments for disability. MacKay, Johnson, supra.
The dissent disregards the statutory directive by failing to consider the municipal plan in its entirety. Instead, the dissent disaggregates the plan and compares individual components to the wdca, concluding that benefits received after the twenty-five-year reduction are not “like” wdca benefits. Under the dissent’s approach, plaintiffs would receive the best of preretirement and postretirement periods, i.e., higher benefits during their “creditable service” years and *13 higher benefits in their “retirement” years.[8] This approach is not consistent with the statute or our precedent.
Next, the majority and the dissent apparently agree that the phrase “like benefits” does not require precisely identical benefits. Had the Legislature intended to permit identical benefits, it would have used words such as “identical,” “equivalent,” or “exactly the same” instead of “like.” But the Legislature did not employ those phrases. We thus conclude that the plans need not provide exactly the same benefits. The dissent fails to explain why it does not share our view.
Next, the dissent states that we have “ignore[d] our duty to recognize that the wdca is a remedial statute that should be liberally construed in favor of the employee, and must be construed to grant rather than deny benefits.” Post at 22. We do not think that the statute at issue is ambiguous.
In any event, if the statutory language were ambiguous, our first duty is to attempt to discern the legislative intent underlying the ambiguous words. Only if that inquiry is fruitless, or produces no clear demonstration of intent, does a court resort to the remedial preferential rule relied on in the dissent.
The dissent would hold that the Legislature intended disabled employees to receive benefits *14 greater than the nondisabled after twenty-five years of creditable service. This scheme would encourage employees to become disabled as retirement approached to obtain greater benefits.[9] The act has never been construed as providing a disincentive for recovery and return to work.[10] We decline to “construe” this section of the wdca to create incentives that other areas of the act spurn.
The dissent’s construction would create classes of disabled employees—i.e., officers disabled before reaching twenty-five years of service and officers disabled after reaching twenty-five years of service— who are treated differently without apparent reason. Under the dissent’s approach, those injured early would receive greater benefits than those injured *15 later. A reasonable inference is not available that the Legislature intended to create unequal outcomes.
Moreover, the dissent’s analysis would likely cause municipalities to repeal ordinances providing “like benefits” and thus ultimately deprive police and fire personnel of a valuable benefit.[11] If we were to judicially engraft onto the statute a right to make two elections of benefits—one at the time of the disability and the second when the years-of-service limitation is triggered—municipalities would not establish an independent disability scheme because it would lead to increased costs. As a result, disabled police and fire personnel in the future would be forced to rely entirely on the disability benefits conferred by the WDCA. Thus, the dissent’s interpretation would effectively nullify the statutory option of “like benefits” for which public safety officers and their advocates successfully petitioned the Legislature.[12]
Further, would the Legislature have created a pending financial trap for unwary cities that chose, at the Legislature’s invitation, to create a beneficial program for injured public safety officers? The majority believes the Legislature would not do such a thing, but this outcome would ensue if the dissent’s approach prevailed. Detroit, either as a self-insurer *16 offering “like benefits,” or as an insured paying premiums to an insurance company on the basis of the risks, would be forced to finance benefit payments for which no insurance reserves exist; that is, for unanticipated, and thus unfunded, risks. The Legislature plainly expressed no intent to require cities to raise local taxes or cut other programs to finance such additional responsibilities. In light of these considerations, any ambiguity in the statute would support our conclusion that the Legislature did not intend to allow a second election of benefits.
Finally, the remedial rule of preference cited by the dissent requires courts to determine how an interpretation of the statute would affect all similarly situated claimants, not merely the particular claimants in a particular case. The dissent stands the doctrine on its head; it construes the statute in favor of the particular plaintiffs, but against the entire class of disabled officers. Under the dissent’s approach, these municipal plans would cease to exist. Thus, the remedial legislation doctrine, if it applied, would support our conclusion.
V. CONCLUSION
The plain language of MCL 418.161(l)(c), requires a disabled police officer to choose either wdca benefits or “like benefits” provided by a municipality or village. By accepting “like benefits,” an officer elects the entire municipal plan. Section 161(l)(c) does not permit an officer to change an election after it has been made. Plaintiffs accepted periodic payments for disability under defendant’s charter and thereby waived the provisions of the wdca. Accordingly, we affirm the Court of Appeals decision.
*17 Taylor, Young, and Markman, JJ., concurred with Corrigan, C.J.

 Section 161(l)(c) provides:
Police officers, fire fighters, or employees of the police or fire departments, or their dependents, in municipalities or villages of this state providing like benefits, may waive the provisions of this act and accept like benefits that are provided by the municipality or village but shall not be entitled to like benefits from both the municipality or village and this act; however, this waiver shall not prohibit such employees or their dependents from being reimbursed under section 315 for the medical expenses or portion of medical expenses that are not otherwise provided for by the municipality or village. This act shall not be construed as limiting, changing, or repealing any of the provisions of a charter of a municipality or village of this state relating to benefits, compensation, pensions, or retirement independent of this act, provided for employees.

 This section was last amended on November 5, 1968, and has been in effect since January 1, 1969.

 The Detroit charter plan describes these reduced benefits as a “reduced disability allowance.” Detroit City Charter, tit IX, ch VII, art VI, part B, § 2(b).

 At oral argument, plaintiffs’ counsel questioned whether an election had been made. The record reflects, however, that plaintiffs stipulated that they had elected to receive benefits under the municipal plan.

 The net of that evaluation is a calculation of which would produce a better return. This requires the officer and his advisors, lawyers, or union representatives to set greater present benefits off against reduced later, or “retirement,” benefits.

 Section 161(l)(c) now excludes from the waiver of wdca benefits any “medical expenses or portion of medical expenses that are not otherwise provided for by the municipality or village.”

 Plaintiffs’ reliance on language in certain Court of Appeals cases is misplaced. In Teddy v State Police, 102 Mich App 412; 301 NW2d 876 (1980), the Court of Appeals analyzed whether the pension in that case was “like” worker’s compensation benefits. It stated that “[wjhether the benefits are like benefits depends on whether the pension was a disability pension or a retirement pension.” Id. at 421. It then determined that the pension in that case was a retirement pension.
In Hatton, supra, the Court of Appeals held that a Saginaw plan did not bar recovery of WDCA benefits by a disabled firefighter who had reached the age of fifty-five. It stated that, although the municipal pension was “still referred to as a ‘disability pension,’ the worker who attains age fifty-five is actually receiving retirement benefits to which the worker would be entitled regardless of disability. We believe that once a disabled worker *11 attains age fifty-five the pension should be considered a retirement rather than a disability pension.” Id. at 531.
The Court of Appeals explained why the interpretation of the Saginaw Charter in Hatton does not control here:

 The dissent agrees that for the period leading up to the twenly-fiveyear retirement limitation, Detroit gives its disabled police officers and firefighters “like benefits” even though those “like benefits” amount to more than similar wdca disability benefits. However, when the twenty-five-year retirement limit is reached, Detroit’s benefits are “reduced” to the level of all other retirees. The dissent claims that those benefits cease to be “like benefits” at that time because of the reduction. Thus, the dissent’s test for “like benefits” seems to depend on whether the benefits are less than or greater than those provided by the wdca.

 In Franks, supra at 654, we observed that worker’s compensation benefits are meant, as are other similar social welfare benefits programs, to provide a “safety net [by] means of income maintenance for persons who have met misfortune or whose regular income has been cut off.”
In the course of determining that the Legislature could properly provide for coordination of benefits, we quoted remarks made by Governor William Milliken concerning the coordination of benefits legislation that are equally applicable in the current context:
“To start with, we must keep in mind that the purpose of workers’ compensation, after all, is to restore wage-earning capacity lost in on-the-job accidents. Workers’ compensation was never intended to be more lucrative than gainful employment or to be a retirement bonus.” [Franks, supra at 655, quoting remarks by Governor William G. Milliken to the Ann Arbor Chamber of Commerce on November 18, 1981.]

 As Theodore J. St. Antoine, the Governor’s Special Counselor on Workers’ Compensation, stated in a report entitled, Report on Workers’ Compensation in Michigan: Costs, Benefits, and Fairness, presented on December 12, 1984 to Governor James J. Blanchard’s Cabinet Council on Jobs and Economic Development, there is a “long-standing notion that income replacement should not be total lest it prove a disincentive to work . . . .” [Quoted in Franks, supra at 658.]

 The record reflects that plaintiffs Crowe and Conant received greater benefits under the municipal disability plan than they would have received under the wdca.

 Further, the current “like benefits” options resulted from collective bargaining between the city and the police and firefighters’ unions. The collectively bargained city charter provision treats all retirees the same. Once the twenty-five-years-of-credited-service limitation is reached, all police or fire retirees—whether disabled or able-bodied—receive benefits at the same level. It is not surprising that a union would seek to obtain identical benefits for its members rather than to create discrete classes of employees who would receive different benefits.