645 N.W.2d 654 (2002)
William A. MAIER, Plaintiff-Appellee,
v.
GENERAL TELEPHONE CO. OF MICHIGAN and American Motorist Insurance Company, Defendants-Appellants, and
GTE North, Inc. and Insurance Co. of the State of Pennsylvania, Defendants-Appellees.
No. 120506, COA No. 227825.
Supreme Court of Michigan.
June 14, 2002.

ORDER
On order of the Court, the application for leave to appeal from the September 28, 2001 decision of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.
CORRIGAN, C.J., concurs and states as follows:
I concur in the order denying leave to appeal because I do not question the result. I write separately, however, because I respectfully disagree with aspects of the Court of Appeals mode of statutory interpretation. Where the text of a statute is clear, courts must apply it without resorting to judicial construction. People v. McIntire, 461 Mich. 147, 153, 599 N.W.2d 102 (1999).
This case involves interpretation of a provision of the Worker's Disability Compensation *655 Act (WDCA), M.C.L. § 418.101 et seq. MCL 418.301(5)(d)(i) provides: "There is a presumption of wage earning capacity established for employments totaling 250 weeks or more." The Court of Appeals held that the statutory presumption of wage earning capacity after 250 weeks is rebuttable. 247 Mich.App. 655, 637 N.W.2d 263 (2001). It observed that "the plain language of subsection 301(5)(d)(i) reveals no ... intention that the presumption of wage-earning capacity be considered conclusive. Absent any language indicating such an intention, we decline to infer one." 247 Mich.App at 662, 637 N.W.2d 263. This analysis of the statutory text appears sound.
Unfortunately, the Court of Appeals did not confine its analysis to the text. It also invoked the preferential rule of interpretation that "the WDCA, as a remedial statute, must be `liberally construed to grant rather than deny benefits.' "247 Mich.App at 663, 637 N.W.2d 263 (internal quotations omitted). The Court of Appeals also discussed the "purpose" of the WDCA and declined "to interpret subsection 301(5)(d)(i) in a manner that would thwart the purposes underlying the WDCA." 247 Mich.App at 664, 637 N.W.2d 263.
The Court of Appeals need not have ventured beyond the statutory text. "When a legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself and there is no need for judicial construction; the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case." McIntire, supra at 153, 599 N.W.2d 102. The Court of Appeals departed from the statutory text in two ways: 1) it relied on the "purposes" of the WDCA, and 2) it needlessly applied a preferential rule of interpretation.

I. Legislative intent or purpose
A first principle of statutory interpretation is that the words expressed in the statute are the law. Unexpressed motivations or intentions of legislators are not the law because they have not been voted on and passed by a majority of both houses of our Legislature and signed by the Governor. Courts thus lack authority to elevate unexpressed intentions above the text of the law itself.
This Court has repudiated nontextual modes of interpretation. For example, in McIntire, supra, we rejected the so-called "absurd result" doctrine of avoiding the text of a statute when judges view the result as absurd or unjust. We agreed "with Justice Scalia's description of such attempts to divine unexpressed and nontextual legislative intent as `nothing but an invitation to judicial lawmaking.' "McIntire, supra at 156, n. 2, 599 N.W.2d 102, quoting Scalia, A Matter of Interpretation: Federal Courts and the Law (New Jersey: Princeton University Press, 1997), p. 21.
Courts do, of course, routinely state that discerning legislative intent is the goal of statutory interpretation. The Legislature's actual intent is not, however, the true object of inquiry. Rather, courts should attempt to "ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute. "State Farm Fire & Casualty Co v. Old Republic Ins Co, 466 Mich. 142, 146, 644 N.W.2d 715, 717 (2002) (emphasis supplied). See also Veenstra v. Washtenaw Country Club, 466 Mich. 155, 645 N.W.2d 643 (2002). Justice Scalia has described this process accurately:
The evidence suggests that, despite frequent statements to the contrary, we do not really look for subjective legislative intent. We look for a sort of "objectified" intent the intent that a reasonable person would gather from the text of the law, placed alongside the remainder of the corpus juris. As Bishop's old *656 treatise nicely put it, elaborating upon the usual formulation: "[T]he primary object of all rules for interpreting statutes is to ascertain the legislative intent; or, exactly, the meaning which the subject is authorized to understand the legislature intended." And the reason we adopt this objectified version is, I think, that it is simply incompatible with democratic government, or indeed, even with fair government, to have the meaning of a law determined by what the lawgiver meant, rather than by what the lawgiver promulgated. That seems to me one step worse than the trick the emperor Nero was said to engage in: posting edicts high up on the pillars, so that they could not easily be read. Government by unexpressed intent is similarly tyrannical. It is the law that governs, not the intent of the lawgiver. That seems to me the essence of the famous American ideal set forth in the Massachusetts constitution: A government of laws, not of men. Men may intend what they will; but it is only the laws that they enact which bind us. [Scalia, supra at 17 (emphasis in original).]
For these reasons, I respectfully disagree with the Court of Appeals reasoning to the extent that it analyzed the purposes rather than the text of the WDCA.

II. Preferential or "dice-loading" rules of interpretation
The Court of Appeals also looked beyond the statutory text when it stated that the WDCA must be construed to grant rather than deny benefits. Courts lack authority to "load the dice" for a particular result. Scalia, supra at 27. This Court recently clarified that the preferential rule favoring a liberal interpretation of remedial statutes such as the WDCA does not apply where the text of the statute is clear. Crowe v. Detroit, 465 Mich. 1, 13, 631 N.W.2d 293 (2001). This Court further stated:
In any event, if the statutory language were ambiguous, our first duty is to attempt to discern the legislative intent underlying the ambiguous words. Only if that inquiry is fruitless, or produces no clear demonstration of intent, does a court resort to the remedial preferential rule relied on in the dissent. [Id.][1]
Justice Scalia has argued forcefully against the use of preferential rules, including the one involved in this case:
To the honest textualist, all of these preferential rules and presumptions are a lot of trouble. It is hard enough to provide a uniform, objective answer to the question whether a statute, on balance, more reasonably means one thing than another. But it is virtually impossible to expect uniformity and objectivity when there is added, on one or the other side of the balance, a thumb of indeterminate weight. How "narrow" is the narrow construction that certain types of statute are to be accorded; how clear does a broader intent have to be in order to escape it? ...
But whether these dice-loading rules are bad or good, there is also the question of where the courts get the authority to impose them. Can we really just decree that we will interpret the laws that Congress passes to mean less or more than what they fairly say? I doubt it. [Scalia, supra at 28-29 (emphasis in original).]
Accordingly, the Court of Appeals should not have cited or applied a preferential rule in this case.
NOTES
[1] As discussed above, the legislative intent that we search for is the "objectified" form of intent described by Justice Scalia, consistent with State Farm and Veenstra, supra.